IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.K.,[1]

        Plaintiff,

v.

FRANK BISIGNANO,[2]
Commissioner of the Social Security Administration,

        Defendant.

Case No. 24-2372-DDC

**MEMORANDUM AND ORDER**

    Defendant, Commissioner of the Social Security Administration, denied plaintiff J.K.'s claim for disability-insurance benefits. Plaintiff asks this court to reverse. The court reverses the Administrative Law Judge (ALJ)'s decision and remands for further proceedings consistent with this Memorandum and Order.

**I.**    **Standard of Review**

    Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the

---

[1]     As part of the court's efforts to preserve the privacy interests of Social Security claimants, it has decided to caption its orders using only plaintiff's initials.

[2]     Frank Bisignano was confirmed as the Commissioner of the Social Security Administration earlier this year. The court thus substitutes Mr. Bisignano as the defendant here under Fed. R. Civ. P. 25(d). Under the last sentence of 42 U.S.C. § 405(g), neither the parties nor the court needs to take further action to complete this process.

Commissioner's denial of benefits is limited to these questions: Whether substantial evidence in the record supports the agency's factual findings and whether the Commissioner applied the correct legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (identifying same two questions on review); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (citation and internal quotation marks omitted). While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and internal quotation marks omitted). But they also don't accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*,

2

311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "'appropriate circumstances'"—in other words, applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79 (explaining ALJ's failure to weigh medical opinion harmless error if no inconsistency between opinion and ALJ's residual functional capacity finding); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012) (finding ALJ's failure to weigh medical opinions properly and expressly was harmless error when "further analysis or weighing" couldn't "advance [plaintiff's] claim of disability"); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (holding ALJ's lack of analysis for residual functional capacity determination "troubling" but nonetheless deciding it comports with record evidence).

## II.     Disability Determination

Claimants seeking Disability Insurance Benefits bear the burden to show their disability. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520, which governs claims for disability insurance benefits). As summarized by the Tenth Circuit, the familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4). The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner at step five. *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003). The Commissioner must "show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Id.* (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

### III.  Background

Plaintiff claims she is disabled due to a variety of severe mental and physical impairments. The Social Security Administration denied plaintiff's initial application, determining that she is not disabled. Doc. 6 at 61 (Tr. 55). The ALJ affirmed this denial. *Id.* at 13–37 (Tr. 7–31). Plaintiff then appealed to the District of Kansas, which—on the agency's motion—reversed the decision and remanded plaintiff's case to the agency for further administrative proceedings. *Id.* at 1229 (Tr. 1223). On remand, the ALJ again denied plaintiff's claim. *Id.* at 1147–62 (Tr. 1141–56).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 1, 2019. *Id.* at 1150 (Tr. 1144). At step two, the ALJ found plaintiff to have the following severe impairments: degenerative disc disease of the lumbar spine, chronic myofascial pain syndrome, obesity, depressive disorder, anxiety with panic disorder, attention deficit hyperactivity disorder, and dissociative amnesia. *Id.* At step three, the ALJ determined that plaintiff doesn't have an impairment equivalent to a listed condition. *Id.* at 1151 (Tr. 1145).

The ALJ then defined plaintiff's residual functional capacity (RFC). *Id.* at 1153 (Tr. 1147). The ALJ found plaintiff can perform medium work. Specifically, plaintiff

> can lift and carry up to 50 pounds occasionally and lift or carry up to 25 pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. [Plaintiff] can occasionally climb ladders, ropes and scaffolds, and stoop; and can frequently climb ramps and stairs, kneel, crouch, crawl, and balance as defined by the SCO. [Plaintiff] can occasionally work at unprotected heights, with moving mechanical parts, and in vibration. [Plaintiff] can understand, remember and carry out simple, detailed but not complex instructions and cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas, with only occasional judgment and changes in a routine work setting. The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

*Id.* The ALJ based this finding on "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* The ALJ also noted that he had "considered the medical opinion(s) and prior administrative medical findings[.]" *Id.*

At step four, the ALJ concluded that plaintiff can't perform her past relevant work as a dietary aide or deli manager. *Id.* at 1161 (Tr. 1155). The ALJ then proceeded to step five. Based on the testimony of a vocational expert, the ALJ determined that suitable jobs for plaintiff exist in significant numbers in the national economy. *Id.* Specifically, the ALJ found plaintiff could work as a:

- Riveting machine operator, a medium exertion, unskilled position;

- Casting machine tender, a medium exertion, unskilled position; and

- Boring machine tender, a medium exertion, unskilled position.

*Id.* at 1162 (Tr. 1156).

Plaintiff now appeals.

**IV.    Analysis**

Plaintiff raises a variety of challenges to the ALJ's decision, but the court need only consider one. Plaintiff argues that the ALJ erred when evaluating a medical opinion from APRN Tamara Canterbury. Doc. 7 at 14. The court agrees.

As relevant here, Canterbury opined that plaintiff has some marked limitations—a level above moderate limitations. *See* Doc. 6 at 900–02 (Tr. 894–96). The ALJ found Canterbury's opinion only partially persuasive because the record didn't support marked limitations. *Id.* at 1160 (Tr. 1154). But not all of Canterbury's opinion found marked limitations. Canterbury also addressed plaintiff's moderate limitations. Specifically, the rest of Canterbury's opinion concluded that plaintiff has the following moderate limitations:

- the ability to remember locations and work-like procedures;

- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances,

- the ability to work in coordination with or proximity to others without being distracted by them.

*Id.* at 900–02 (Tr. 894–96). Canterbury also estimated that plaintiff would be absent from work more than three times per month. *Id.* at 903 (Tr. 897). Plaintiff argues that the ALJ failed to address both these moderate limitations and plaintiff's absence rate. Doc. 7 at 15–16.

Plaintiff is correct. The ALJ recited these findings, Doc. 6 at 1160 (Tr. 1154), but the RFC doesn't incorporate them, *id.* at 1153 (Tr. 1147). This was error. ALJs must "'provide specific, legitimate reasons'" for discounting or dismissing medical source opinions. *Harrold v. Berryhill*, 714 F. App'x 861, 865 (10th Cir. 2017) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). When no inconsistencies surface between a medical opinion and the ALJ's RFC finding, the "'need for express analysis is weakened.'" *Keyes-Zachary*, 695 F.3d at 1161–62 (quoting *Howard*, 379 F.3d at 947). But when inconsistencies do emerge, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p.

By failing to explain why he issued an RFC inconsistent with the above moderate limitations and plaintiff's absence rate, the ALJ ran afoul of SSR 96-8p. *Allison M. v. Saul*, No. 19-CV-2517-JAR, 2020 WL 2101281, at *4 (D. Kan. May 1, 2020) (reversing and remanding where "certain limitations were not reflected in Plaintiff's RFC"); *Trujillo v. SSA*, No. 17-CV-1590-WJM, 2018 WL 4599690, at *5 (D. Colo. Sept. 25, 2018) (vacating and remanding where "ALJ did not satisfactorily address his decision to exclude from his RFC determination any potential limitations stemming from [plaintiff's] mental or cognitive impairments, including [plaintiff's] need for breaks throughout the day, the likelihood that [plaintiff] would be off-task, or [plaintiff's] need to be absent from work several days per month."); *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *5 (4th Cir. Apr. 14, 2023) (reversing and remanding where there was "evidence supporting [plaintiff's] need to miss work in the administrative record, and the ALJ's decision d[id] not discuss this evidence, nor [did] the ALJ's decision adequately explain why the evidence should be rejected").

Trying to save the ALJ's decision, defendant argues that the ALJ rejected Canterbury's opinion as only partially persuasive. Doc. 12 at 17. And defendant argues that the ALJ found Canterbury's opinion persuasive only to the extent that it was "consistent with the existence of severe mental impairments[.]" *Id.* Defendant also argues, "the ALJ explicitly rejected any greater limitations than those adopted in his RFC finding on the basis that they were inconsistent with the objective psychological evidence as well as Plaintiff's admitted activities." *Id.*

Not so. The only part of Canterbury's opinion that the ALJ found unpersuasive was the marked limitations:

> Tamara Canterbury APRN opined that the claimant had slight to marked limitations in understanding, remembering, and applying information, none to marked in interact, slight to marked in concentrate persist and pace, and slight to marked in adapt of manage oneself and would be absent 3+ days. The opinion is partially persuasive. While the medical record does support severe psychiatric impairments that limit, *the opinion of marked limitations* is not supported by the medical record including treating notes showing the claimant was oriented, had no focal deficits, and was cooperative, and the testimony of the claimant that she has a boyfriend, lives with 3 kids and grandson (aged 18, 16, 14 and 1), is primary caregiver, sweeps, vacuums, does laundry, prepares meals, drives, goes to a store 3 time[s] a month and uses the internet for ordering online and interacts on Face Book twice a week.

Doc. 6 at 1160 (Tr. 1154) (emphasis added) (internal citations omitted). So, contrary to defendant's argument, the ALJ didn't reject Canterbury's other conclusions—including her moderate limitations and absence rate—and so an inconsistency exists.

"[F]ailure to resolve conflicts between a medical opinion relied on by the ALJ and a claimant's RFC typically results in reversible error." *Karla M. v. Kijakazi*, No. 21-CV-02528-EFM, 2022 WL 4597849, at *7 (D. Kan. Sept. 30, 2022). As plaintiff points out, the ALJ's error isn't harmless. The vocational expert testified that employers will allow only one day of absence per month. Doc. 6 at 59 (Tr. 53). "Anything more than that would preclude work." *Id.* But Canterbury estimated that plaintiff would miss work three times per month. *Id.* at 903 (Tr. 897). So, the ALJ's failure to account for plaintiff's absences in the RFC undermines his finding that

8

suitable jobs for plaintiff exist in significant numbers in the national economy. *Id.* at 1161 (Tr. 1155).

Because the court concludes that the ALJ did not follow the correct legal standards when evaluating Canterbury's opinion and crafting the RFC, the court reverses and remands for further proceedings. The court "will not reach the remaining issues raised by [plaintiff] because they may be affected by the ALJ's resolution of this case on remand[.]"[3] *Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004)

### V.     Conclusion

The Social Security Administration's decision is reversed, and this case is remanded for rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**Dated this 26th day of September, 2025, at Kansas City, Kansas.**

>               **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

---

[3] For instance, the ALJ found that plaintiff can carry out simple, detailed but not complex instructions. Doc. 6 at 1158 (Tr. 1152). But our Circuit has noted that "the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)). Level two reasoning requires a worker to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles (DOT) 665.685-018. Note that the word "simple" doesn't appear in that definition. So, it would seem that the ALJ's finding limiting plaintiff to simple instructions would preclude plaintiff from functioning in a job that requires level two reasoning. Yet the ALJ held that plaintiff could perform two jobs involving level two reasoning: riveting-machine operator, DOT 616.685-058, and boring-machine tender, DOT 665.685-018. The limitation to level one reasoning leaves only one job of the three identified as suitable for plaintiff: casting-machine tender—a job requiring only level one reasoning. DOT 556.685-090. The court can't evaluate the harm of this error—if the error even exists—without knowing whether plaintiff's absentee levels would preclude work as a casting-machine tender.